IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| CAPITAL ONE BANK (USA), N.A., | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO: 0:08-cv-02274-JFA |
| | ) | |
| CAREFREE DEBT, INC. A/K/A | ) | |
| CDI, FEDERAL DEBT RELIEF | ) | |
| SYSTEMS, CREDIT | ) | **JUDGMENT BY DEFAULT** |
| COLLECTIONS DEFENSE | ) | |
| NETWORK, ELIZABETH | ) | |
| SALAZAR, and SUZAN AZEREDO, | ) | |
| | ) | |
|    Defendants. | ) | |
| _____ | ) | |

Plaintiff Capital One Bank (U.S.A.), N.A. ("Capital One") commenced this action on June 19, 2008, alleging that the defendants had engaged in a nationwide fraudulent debt elimination scheme, targeting Capital One credit card account holders and counterfeiting Capital One's registered trademark in an effort to frustrate and interfere with Capital One's legitimate customer relationships. (Doc. # 1). Capital One's claims against the defendants included causes of action for tortious interference with contractual or business relations, civil conspiracy, and for various violations of the Lanham Act. Capital One sought injunctive relief, as well as actual, statutory and punitive damages, and attorney's fees and costs.

All defendants other than Elizabeth Salazar were served with the summons and complaint. One defendant, Credit Collections Defense Network ("CCDN") waived service.

(Doc. # 21). The only defendants to answer or otherwise appear in defense of Capital One's claims were CCDN and Suzan Azeredo, who filed an answer *pro se*. (Doc. # 31, 36)

CCDN moved to dismiss Capital One's complaint, asserting that this court lacked personal jurisdiction over CCDN and that Capital One's complaint failed to state a claim against CCDN. (Doc. #31). On January 9, 2009, I denied CCDN's motion to dismiss. (Doc. #43). CCDN then answered the complaint, and sought sanctions against Capital One pursuant to Rule 11 Fed. R. Civ. P. (Doc. # 46). On March 6, 2009, I struck CCDN's request for sanctions from its answer. (Doc. # 59). On January 14, 2010, CCDN's counsel of record moved to be relieved. (Doc. # 85) and on January 15, 2010 Capital One filed a motion to compel CCDN to respond to discovery. (Doc. # 88). On January 25, 2010, I granted counsel for CCDN's motion to be relieved and also issued an order instructing CCDN to notify the court of its new counsel within fifteen days. (Doc. # 90, 93). CCDN failed to retain substitute counsel, and on March 9, 2010 the Clerk entered default as to CCDN (Doc. # 99). On April 8, 2010, I ordered CCDN to respond to Capital One's motion to compel, and notified CCDN that it would be held in contempt of court for failure to respond. (Doc. # 102).

CCDN failed to comply with my April 8, 2010 order, and on April 27, 2010 I ordered CCDN to appear before me and show cause why it should not be held in contempt for failing to respond to Capital One's discovery requests. (Doc. # 105). None of the defendants appeared at that hearing. On May 12, 2010, based upon the corporate defendants' failure to appear, I directed the Clerk of Court to enter default against all corporate defendants. (Doc. # 108).

On June 1, 2010, I entered a permanent injunction against all of the corporate defendants. (Doc. # 113). On July 9, 2010 I entered a consent permanent injunction against Defendant Suzan Azeredo. (Doc. # 125). In exchange for Ms. Azeredo's consent to a permanent injunction, Capital One waived any claim for damages against Ms. Azeredo. Capital One's remaining claims against Ms. Azeredo were dismissed with prejudice. Id.

This matter came before the court on September 13, 2010 for a hearing to ascertain Capital One's damages and to enter a default judgment against the defendants CCDN, Carefree Debt, Inc. a/ka/ CDI and Federal Debt Relief Systems. (Doc. #130). The Clerk served notice of the hearing upon CCDN by U.S. Mail on August 5, 2010. (Doc. # 131). None of the defendants appeared at the hearing. (Doc. # 135). Capital One was represented by W. Keith Martens and Hamilton Martens & Ballou, LLC, and by Rik S. Tozzi and Burr Forman, LLP. Mr. Tozzi had previously been admitted *pro hac vice*. (Doc. # 26). At the hearing, Melissa Douglass, a senior manager in Capital One's Process Management Department testified concerning Capital One's damages.

Evidence Supporting Damage Award

As alleged in Capital One's complaint and established by the defendants' default, the defendants used television and internet advertisements to encourage individuals with debt problems to contact the defendants and explore opportunities allegedly provided by the defendants' program. To participate in the program, individual debtors were required to sign a document entitled a "Debt Termination Education Agreement" whereby the individual agreed to make payments to the defendants and the defendants purported to educate the individual on the United States banking system and to assist the individuals with written

communications to creditors, collections agencies, and attorneys in order to terminate the individual's unsecured debt obligations.

Consumers lured by the defendants' scheme included residents of South Carolina. Capital One presented evidence that at least six South Carolina residents were drawn in by the defendants' scheme, including one couple that paid the defendants $7,943.80 for the defendants' purported services. The court takes judicial notice that the same couple was later forced to file bankruptcy, after the defendants' scheme failed to eliminate the couple's debts as promised. *See* U.S.D.S.C. Bankr. Case 08-08115-hb, filed December 17, 2008.

The corporate defendants shared clients and passed client information from one to the other, actually providing little or no useful services to their customers. Customers received worthless literature regarding the banking system, were told to stop making payments to their creditors, and were provided form pleadings in the event legitimate creditors commenced debt-collection processes in court. In addition, the defendants executed fraudulent documents, purporting to be acknowledgements from creditors, including Capital One, that individuals' debts had been satisfactorily discharged. Typically, these documents were prepared on what appeared to be Capital One's letterhead included a counterfeit trademark and were signed by persons purporting to be authorized agents or officers of Capital One. These documents were then sent to credit reporting agencies in an effort to induce the credit reporting agency to cease its credit reporting concerning the consumer's debt.

Capital One presented evidence of thirty-nine identified customer accounts where Capital One's registered trademark had been fraudulently misappropriated by defendants to create the perception that a Capital One customer's account had been satisfied in full.

Capital One also presented evidence that defendants fraudulently offered counterfeit services, including promises to repair credit. Capital One's loss on these thirty-nine accounts totaled $216,841.58. Defendant CCDN's refusal to respond to Capital One's discovery requests, after being ordered to do so, was undoubtedly a calculated effort by the defendants to avoid turning over additional account information to Capital One. Had CCDN complied with this court's order, the number of Capital One accounts at issue and the scope of Capital One's actual damages would have likely been significantly higher than as presented at the damages hearing.

## Damages Awarded

At the damages hearing, Capital One requested an award of actual and punitive damages based upon the defendants' tortious and documented interference with Capital One's legitimate business relations with Capital One customers. In addition, Capital One requested an award of statutory damages, attorney's fees and costs based upon the defendants' misappropriation of Capital One's registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114, et seq.

### I. Damages for Defendants' Tortious Interference with Contractual Relations

Capital One presented credible evidence that it has suffered actual damages totaling $216,841.58 as a direct and proximate result of the defendants' interference with Capital One's legitimate contractual relationships with 39 Capital One account holders. Based upon the evidence presented at the damages hearing, I find and conclude that Capital One is entitled to recover actual damages of $216,841.58 under its tortious interference cause of action.

In addition, Capital One requested an award of punitive damages in an amount equal to seven times its actual damages. An award of punitive damages may be imposed to further the "legitimate interests in punishing unlawful conduct and deterring its repetition." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996). A district court considering an award of punitive damages is guided by three principal considerations: (1) the degree of reprehensibility of the defendants' misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damage award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in similar cases. State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003). In addition, a district court must remain mindful that the Due Process clause "prohibits the imposition of grossly excessive or arbitrary punishments." Id. As a general rule, "few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." Id. at 425.

Based upon the facts of this case, and considering the factors set forth by the Supreme Court in BMW and Campbell, I find that an award of punitive damages equal to seven times Capital One's actual damages is warranted. As an initial matter, the court cannot overstate its view of the defendants' conduct as utterly reprehensible. The defendants have engaged upon a persistent and intentionally deceitful course of conduct, praying upon the desperation of consumers who have found themselves in financial straits. The defendants charged exorbitant fees, while providing little or no legitimate service to their customers. The defendants intentionally and purposefully misrepresented themselves as agents of Capital One in an attempt to carry out their scheme. The defendants' conduct certainly caused

damage to Capital One and other legitimate creditors, by convincing Capital One account holders to withhold payments in reliance upon the defendants' lies and hollow promises of debt relief.  In the end, the defendants' customers and creditors are left "holding the bag."  An award of punitive damages equal to seven times' Capital One's actual damages is well within an acceptable range to achieve the dual purposes of deterrence and retribution, as enunciated by the Supreme Court in <u>Campbell</u>.   Based upon the foregoing, I find and conclude that Capital One is entitled to recover additional punitive damages in the sum of $1,517,891.06.

*II.  Damages for Defendants' Violation of the Lanham Act*

The Lanham Act provides:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover
    (1)  the defendant's profits;
    (2)  any damages sustained by the plaintiff; and
    (3)  the costs of the action. . . .  The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).  If the court finds that a defendant's use of a counterfeit mark was willful, a plaintiff may elect "instead of actual damages and profits" an award of statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed as the court considers just."  15 U.S.C. § 1117(c)(2).

Based upon the evidence presented at the damages hearing, I find that the defendants' intentionally and willfully counterfeited Capital One's registered trademark and used this counterfeit mark in connection with the fraudulent services defendants sold in furtherance of their scheme.  Capital One elected an award of statutory damages in lieu of actual damages

and profits. Capital One's election was necessitated, in large part, by the defendants' refusal to cooperate in discovery, or to produce a list of Capital One account holders enrolled in the defendants' program. Considering these factors, I find and conclude that an award of $2,000,000 in statutory damages is just and appropriate. I also find that this is an exceptional case, justifying an award of attorney's fees and costs. Capital One's requested attorney's fees and costs are reasonable under the circumstances, and Capital One is entitled to award attorney's fees and costs in the amount of $135,900.

Order and Judgment

Based upon the evidence presented at the damages hearing, and considering the factors addressed by this order, the Clerk is instructed to enter judgment in favor of Capital One Bank (USA), N.A. and against the defendants Carefree Debt, Inc. a/k/a CDI, Federal Debt Relief Systems and Credit Collections Defense Network, jointly and severally, in the total sum of Three Million Eight Hundred Seventy Thousand Six Hundred Thirty Two and 64/100 Dollars ($3,870,632.64). In addition, the Clerk is instructed to send a copy of this order to the U.S. Attorney for the District of South Carolina and the South Carolina Attorney General, so that those agencies may explore the possibility of criminal prosecution against these defendants.

      IT IS SO ORDERED.

September 24, 2010                                            Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge